23452

Mike TODD, Appellant v. Carey SMITH, individually and in his official capacity as former City Manager of the City of Myrtle Beach, South Carolina, Mack Stone, individually and in his official capacity as former Director of the Myrtle Beach Convention Center, and the City of Myrtle Beach, South Carolina, a municipal corporation, Respondents.

(407 S.E. (2d) 644)

Supreme Court

*O. Fayrell Furr, Jr.* and *W. Lamar Flatt*, Myrtle Beach, and *Ronald M. Childress*, Columbia, *for appellant.*

*Michael W. Battle*, Conway, *for respondents.*

*Edmund H. Robinson*, of *Shimel, Ackerman, Theos, Spar and Robinson*, Charleston, *for amicus curiae, American Civil Liberties Union of South Carolina.*

Heard Nov. 27, 1990; Decided Aug. 5, 1991.

Rehearing Denied Sept. 4, 1991.

LITTLEJOHN, Acting Associate Justice:

At issue in this appeal is whether the trial judge erred in ruling that the City of Myrtle Beach and/or its agents are not liable for damages alleged to have arisen by reason of their requiring the removal of Plaintiff-Appellant's art work from the convention center operated by the City of Myrtle Beach. The trial judge granted the Defendants-Respondents' summary judgment holding that none were liable. We affirm.

## FACTS

Plaintiff-Appellant Mike Todd was a member of the Waccamaw Arts and Crafts Guild (Guild) in November of 1982. The Guild members, through a series of agreements, were permitted by the City of Myrtle Beach to conduct art exhibits in the inner lobby of the Myrtle Beach Convention Center (Convention Center). The inner lobby is a wide hall through which all persons attending functions at the Convention Center must pass in order to reach the main auditorium. The City agreed to allow the Guild to self-police its displays and act as a self-censor, taking no role in such itself.

On November 7, 1982, Todd displayed an exhibition of his art work in the inner lobby. The exhibition consisted of thirty-one (31) paintings and six (6) sculptures. Before the exhibition, the works were reviewed by a representative of a screening committee appointed by the Guild, and found unobjectionable. On the evening of November 7th, Jane Charles, then President of the Guild, approached Todd and requested that he remove one of the paintings, entitled "Narcissus or Twentieth Century Mondonna,"[1] because she found it offensive.

Todd refused to remove the painting. Thereafter, negotiations ensued between Todd, the Guild, and Mack Stone, Director of the Convention Center. Discussions were had on the possibility that the painting could be displayed separately in an office or covered and uncovered only for those wishing to view it. These negotiations fell through when the City refused to agree that no other paintings would be required to be removed from the exhibit. Thereafter, Defendant Carey Smith, the City of Myrtle Beach Manager, instructed Mack Stone to close the inner lobby of the Convention Center until the matter was resolved.

On November 9th, the Convention Center was open to the public solely for the purpose of entering the Convention Center auditorium. In addition, the entire exhibit was screened from the public by cloth partitions.

On November 11, 1982, Todd petitioned the circuit court for relief, alleging the Defendants had censored his art exhibition without due process of law. The petition sought an injunction restraining the Defendants from further interfering with Todd's exhibition, additional exhibition time, and money damages for lost profits and harm to Todd's reputation and occupation as an artist. The circuit court, after a hearing, issued a temporary injunction against the Defendants to preserve the status quo. The temporary injunction was granted on the basis that Todd had been deprived of procedural due process since obscenity procedures were not followed by the City when display of the painting was prohibited.

Todd reopened his exhibition pursuant to the temporary injunction order. Thereafter, Todd removed his exhibit because

---

[1] This painting is of a nude woman with one hand on her right breast and the other hand apparently fondling herself.

the inner lobby was being used as a display area for a previously scheduled blue grass music convention and Todd did not feel his exhibit was properly protected.

Todd then brought this action against the City of Myrtle Beach, Mack Stone, individually and in his official capacity as former Director of the Convention Center and Carey Smith, individually and in his official capacity as former City Manager pursuant to Federal Statute 42 U.S.C. § 1983 alleging a violation of his civil rights secured by the First and Fourteenth Amendments to the United States Constitution. The circuit court granted summary judgment in favor of all Defendants. This appeal challenges the court's ruling as to each of the Defendants.

## LAW/ANALYSIS

The order of the circuit court correctly cites and relies upon the case of *Monell v. The Department of Social Services* cited *infra*. The testimony upon which the Plaintiff-Appellant would rely simply does not create a genuine issue of fact for trial on the merits. Patently, the action of the City Manager and/or the Director of the Convention Center does not represent official municipal policy. We approve of the trial judge's treatment of the liability issue wherein the order states:

> Action against municipal defendants under Section 1983 were authorized by the landmark decision of the Supreme Court in *Monell v. Dept. of Social Services*, 436 U.S. 658 [98 S. Ct. 2018, 56 L. Ed. (2d) 611] (1978). In *Monell*, the court held that when a municipal policy of some nature is the cause of unconstitutional actions taken by municipal employees, the municipality itself will be liable. Liability will exist where the constitutional action 'implements or executes a policy, statement, ordinance, regulation or decision officially adopted and promulgated by municipal officers, or where the constitutional deprivation is visited pursuant to governmental custom even though such a custom has not received formal approval.' The court defined 'custom' with reference to *Adickes v. S.H. Kress and Co.*, 398 U.S. 144 [90 S. Ct. 1598, 26 L. Ed. (2d) 142] (1970), as 'persistent in wide spread discriminatory prac-

tices of officials.' A policy or custom need not be made by the city's lawmakers, but can be set by those whose edicts which may fairly be said to represent official policy. In the present case, the City of Myrtle Beach has elected to adopt the council/manager form of government. In the council/manager form of city government all legislative powers of the municipality and the determination of all matters of policy shall be vested in the municipal council, each member, including the mayor, to have one vote. Section 5-13-30, Code of Laws of South Carolina, 1976. Under the form of government adopted by the City of Myrtle Beach, the city manager and the director of the Myrtle Beach Convention Center do not have the authority to set city policy, nor can their acts be said to represent official policy in view of the legislative authority granted to the municipal council.

The acts of Defendants Carey Smith and Mack Stone were individual discretionary acts, involving a decision on how to handle a situation which has arisen in the Myrtle Beach Convention Center only once in the entire history of Myrtle Beach. The municipal council never met, nor did they vote, on the decision made by Defendants Smith and Stone. For that reason, the acts of Defendants Smith and Stone cannot be translated as the acts of the city council or the City of Myrtle Beach. The city council does not have the authority to delegate matters of policy of customs, and in this instance it did not delegate that authority to Carey Smith or Mack Stone, therefore the individual decisions of Defendants Smith and Stone do not give rise to liability for the City of Myrtle Beach under 42 U.S., Section 1983. *Monell v. Dept. of Social Services*, 436 U.S. 658 [98 S. Ct. 2018, 56 L. Ed. (2d) 611] (1978).

The most that can be said favorably to Plaintiff's contention that the city established a policy is that some discussion was held informally and individually with some members of council. Under the showing made in this case, we refuse to hold that it was the duty of council members to call a meeting and repudiate the actions of either the city manager or the director of the convention center. No policy was promulgated.

As to Defendants Smith and Stone, the trial judge correctly ruled that they enjoyed qualified immunity from suit by reason of *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. (2d) 396 (1982).

Affirmed.

GREGORY, C.J., and HARWELL, J., concur.

TOAL, J., dissenting in separate opinion.

CHANDLER, J., concurring, in result, with the dissent.

TOAL, Justice (dissenting):

I respectfully dissent. I would reverse the trial court's grant of summary judgment to the City of Myrtle Beach and affirm the grant of summary judgment to Smith, the City Manager, and Stone, the Convention Center Director.

The defendants concede at the outset that the painting is not obscene, and was not determined to be so when Todd was told to close his exhibit or remove the painting. Yet, speech need not be adjudged obscene to be regulated. Before determining whether Todd's painting was permissibly regulated, however, other thresholds should be crossed.

In *Monell v. Department of Social Services,* 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. (2d) 611 (1978), the United States Supreme Court held for the first time that a municipality is a "person" subject to liability under Section 1983 for violating another's federally protected rights. To state a cause of action against a municipality under Section 1983, a plaintiff is required to plead three elements: (1) an official policy or custom (2) that causes the plaintiff to be subjected to (3) a denial of a constitutional right. *Moore v. City of Columbia,* 284 S.C. 278, 326 S.E. (2d) 157 (Ct. App. 1985). A municipality may only be held liable under Section 1983 if the action complained of was taken pursuant to official policy. Also, the municipal policy must be the "moving force of the constitutional violation." *Polk C. v. Dodson,* 454 U.S. 312, 326, 102 S. Ct. 445, 454, 70 L. Ed. (2d) 509 (1981). Thus:

> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom,

whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury the government as an entity is responsible under § 1983.

*Monell, supra,* 436 U.S. at 694, 98 S. Ct. at 2037-38.

Todd contends the acts of Carey Smith and Mack Stone represent official policy and thus give rise to liability for the City of Myrtle Beach. The circuit court ruled that Smith and Stone lacked authority to set City policy, since the City had adopted the council/manager form of government in which the determination of policy is vested in the City Council. On this ground, he ruled Todd's § 1983 action must fail. I disagree.

Under *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S. Ct. 1292, 89 L. Ed. (2d) 452 (1986), it is clear that municipal liability may be imposed for a single decision by municipal policy makers under appropriate circumstances. Further, in *Moore v. City of Columbia,* our Court of Appeals stated:

> The policy need not be one officially adopted and promulgated by the municipality's officials. . . .
>
> The de facto policies of a municipality may be established in several ways. They may be established by the omissions of a municipality or supervisory officials where their unreasonable failure to make rules causes the unconstitutional conduct practiced by their employees. Such omissions are actionable, however, only if they constitute "tacit authorization" of or "deliberate indifference" to constitutional violations.

284 S.C. at 284, 326 S.E. (2d) at 160-161. (citations omitted).

In my opinion, the evidence presented before the lower court appears to indicate this standard was satisfied by Todd, as is demonstrated by the following transcript excerpt.[1]

Q. Was this decision made by you and Mr. Stone?

A. Yes.

. . . .

Q. So this decision was made by you? He was carrying out your order to close down the show?

---

[1] This excerpt involves the decision made by City Manager Carey Smith to close Todd's exhibit.

A. Yes.

. . . .

Q. Did you clear this with the city?

A. Well, what do you mean by "clear"?

Q. Well, did you ask them for their input and their thoughts on what should be done?

A. Yes.

Q. And who did you talk to?

A. I did discuss it with them in general terms. Of course, by that time, there was a lot of publicity in the newspapers and the radio and the television and that sort of thing. So they were generally aware of what had happened. We basically, my recollection is, talked to them individually and told them what we were going to do, what we thought was best to do in the situation.

Q. Did they concur with that?

A. No one really said—and, of course, the council would have had to have acted as a body to have told me, you know, "Don't do this." And if they had done that as a body, then I would not have done it. But they did not give me any such instructions.

A. Did you talk with Mayor Ficken?

A. I'm sure that I did, yes.

Q. He concurred that it should be removed or closed down?

A. I don't recollect, you know, his specific reaction. What I do recollect, though, is that I was not given any instruction. The council was aware of what we were going to do and we were not given any instruction to the contrary as to not to do what we planned.

(Tr. 118-120). I would find the above excerpts from the record sufficient, were they to consist of the sole evidence on the issue, to demonstrate a "policy" of the City of Myrtle Beach creating liability.

"A municipal governing body may not avoid attribution of policy to itself simply by officially retaining unexercised ultimate authority to countermand a policy or to discipline or discharge the policymaker." *Spell v. McDaniel*, 824 F. (2d) 1380 (4th Cir. 1987). "If a higher official has the power to overrule a decision but as a practical matter never does so, the decision-maker may represent the effective final authority on that question." *Bowen v. Watkins*, 669 F. (2d) 979 (5th Cir. 1982). Here, while the City did not implement in a formal manner its policy of excluding offensive but non-obscene speech from the inner lobby of the Convention Center, it, on the record before this Court, appears to have done so through the use of lesser agents of the City, *viz.*, Smith and Stone, and through its acquiescence in their actions and decisions.

However, the lower court's ruling would still be upheld if no violation of Todd's constitutional rights took place. The City argues it is free to regulate speech on its own property in a manner it chooses. The City rightly concedes that traditional areas of public assembly and debate such as streets and parks are public forums in which the State may not, due to First Amendment protections, prohibit all communicative activity. It argues the inner lobby is not a public forum.

In a traditional public forum such as a street or park:

> [f]or the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. The State may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.

*Perry Educ. Ass'n. v. Perry Local Educators' Ass'n.*, 460 U.S. 37, 45, 103 S. Ct. 948, 955, 74 L. Ed. (2d) 794 (1983) (citations omitted). As for other public property, it is true that the "First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *United States Postal Serv. v. Council of Greenburgh Civic Ass'ns.*, 453 U.S. 114, 129, 101 S. Ct. 2676, 2684, 69 L. Ed. (2d) 517 (1981). However, where the State (or City) designates

public property for expressive activity, the respective First Amendment rights of the State and individual change.

When the State has opened public property as a place for expressive activity:

> [t]he Constitution forbids a State to enforce certain exclusions from a forum generally open to the public even if it was not required to create the forum in the first place. Although a State is not required to indefinitely retain the open character of the facility, as long as it does so it is bound by the same standards as apply in a traditional public forum. Reasonable time, place, and manner regulations are permissible, and a content-based prohibition must be narrowly drawn to effectuate a compelling State interest.

*Perry, supra,* 460 U.S. at 45, 46, 103 S. Ct. at 955. Furthermore, a limited public forum may be designated by the State for use by certain groups or for the discussion of certain subjects. *Perry, supra,* 460 U.S. at 46, n. 7, 103 S. Ct. at 955 n. 7. *See also Widmar v. Vincent,* 454 U.S. 263, 102 S. Ct. 269, 70 L. Ed. (2d) 440 (1981).

Myrtle Beach argues it has not designated the inner lobby of the Convention Center as even a limited public forum because it has always maintained control of the kind of expression allowed into the inner lobby. On the record, I must disagree. The record reflects Myrtle Beach allowed the Guild to police itself and took no part whatsoever in restricting, regulating, or screening speech. The Guild members in charge could just as easily have asked Todd to exhibit more works like "Narcissus" as it could have asked him to remove the painting, and Myrtle Beach's policy was to simply trust the Guild. This amounts to an abdication of any restrictions in my view, and I would hold that Myrtle Beach designated a limited public forum in the inner lobby for Guild members who express themselves through art.

Having found a limited public forum to exist, and in light of the obvious fact that Todd's painting was restricted because of its content, I would proceed to apply the test articulated in *Perry, supra, viz.:* was the restriction of Todd's speech (*i.e.,* his painting) "narrowly drawn to effectuate a compelling State interest"? First, I address whether the City has shown

a compelling interest warranting the speech restriction. The United States Supreme Court has recognized a compelling State interest in protecting minors from exposure to vulgar and offensive spoken language. *FCC v. Pacifica Found,* 438 U.S. 726, 98 S. Ct. 3026, 57 L. Ed. (2d) 1073 (1978). The Court has also recognized that children may be protected from sexually explicit speech in the context of a school environment.[2] *Bethel School Dist. No. 403 v. Fraser,* 478 U.S. 675, 106 S. Ct. 3159, 92 L. Ed. (2d) 549 (1986). The record here reflects the City was concerned with the fact that children might be exposed to the "Narcissus" painting. Even assuming this constitutes a compelling state interest, however, I would hold the City did not "narrowly tailor" its restriction of Todd's speech. The City should have adopted a less draconian remedy for its concerns than forcing Todd to remove the painting or close his exhibit. I am far from satisfied with the City's excuse that "negotiations fell through" concerning alternative methods of restricting Todd's exhibit. The City must demonstrate that it offered various measures, such as placing "Narcissus" in a separate area for adult viewers, that Todd could have taken and which he unreasonably refused; or the City must clearly demonstrate why those other measures were not feasible. The City utterly failed on this point.

Hence, I would hold that the record indicates the City has, pursuant to a "policy," infringed upon Todd's First Amendment rights. I would therefore reverse the lower court's granting of summary judgment for Myrtle Beach. However, Todd did not seek summary judgment on this basis.[3] Thus, I would remand this case for further proceedings regarding the defendant Myrtle Beach. If Todd moved for summary judgment on this ground, the City would of course be then free to place any additional evidence it has before the lower court to negate what, on the record before this Court, appears to be a *de facto* "policy" of the City.

As for the defendants Carey Smith and Mack Stone, I would affirm the lower court's ruling that they enjoy qualified

---

[2] The *Fraser* case involved a so-called "captive audience" of children, however—a fact not present here.

[3] Todd moved for summary judgment on the sole ground that an earlier temporary restraining order operated as collateral estoppel against the City. I reject this argument.

immunity from suit by virtue of *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. (2d) 396 (1982). In *Harlow,* the United States Supreme Court held:

> government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Id.,* 457 U.S. at 818, 102 S. Ct. at 2738. Because this case presents a close question as to whether, *inter alia,* the inner lobby constitutes a "public forum," I would hold that Stone and Mack are immune for their actions here under the *Harlow* decision.[4]

CHANDLER, J., concurring, in result, with the dissent, in separate opinion.

CHANDLER, Justice, (concurring, in result, with the dissent):

I agree that summary judgment was improperly entered *in favor* of Defendant City of Myrtle Beach, but express no opinion as to whether, on the record before us, Appellant Todd is entitled to summary judgment *against* the City.

---

[4] *Harlow* qualified immunity is reserved for government *officials,* and may not be asserted by the City of Myrtle Beach. *See, Flanagan v. Munger,* 890 F. (2d) 1557 (10th Cir. 1989); *Bovey v. City of Lafayette,* 586 F. Supp. 1460 (N.D. Ind. 1984).