THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Amrik Singh and SBPS, Inc. d/b/a Travel Inn, Respondents,
 
 
 

v.

 
 
 
 City of Greenville, Appellant.
 
 
 

Appeal From Greenville County
Edward W. Miller, Circuit Court Judge

Unpublished Opinion No. 2012-UP-227
 Heard March 15, 2012  Filed April 18,
2012    

REVERSED

 
 
 
 Ronald W. McKinney, of Greenville, for
 Appellant.
 James Walter Fayssoux, Jr., and Ryan Lewis
 Beasley, both of Greenville, for Respondents.
 
 
 

PER
 CURIAM:  The City of Greenville (the
 City) appeals from an order of the circuit court reversing
 the City's revocation of a business license for the operation of Travel Inn at
 755 Wade Hampton Boulevard.  The circuit court issued its order following a
 hearing on remand from this court, pursuant to the opinion in Amrik Singh & SBPS, Inc. v. City of Greenville (Singh I), 384
 S.C. 365, 681 S.E.2d 921 (Ct. App. 2009).  In Singh I, this court directed the circuit court to review all police
 response calls to Travel Inn, from April 2004 through March 2007, to determine
 whether the City's decision to revoke Singh's license was arbitrary,
 unreasonable, or an obvious abuse of discretion.  384 S.C. at 371, 681 S.E.2d
 at 925.  The circuit court did not rule on
 this issue; instead, it concluded that City Council's directive
 to the City Manager to determine compliance with certain conditions placed on
 the license was an unlawful delegation of legislative authority.  The circuit
 court also concluded that the City Manager's subsequent revocation
 determination was arbitrary.  On appeal, the City challenges both of these
 conclusions, as well as the circuit court's failure to address the merits of
 City Council's revocation decision.  We reverse.
The City first
 argues that City Council's November 15,
 2006 decision to confirm the City Manager's initial revocation, but to allow
 Singh a probationary period of operation under a Conditional Business License,
 was reasonable and fair.  After the circuit court failed to address this issue
 on remand pursuant to Singh I, the City filed
 a motion pursuant to Rule 59(e), SCRCP, requesting a ruling on the issue.  However,
 the circuit court declined to do so.  We now address the issue and uphold City
 Council's decision.
Section 8-43(b)(2) of the
 Greenville City Code (2004) includes "public nuisance" as one of the
 grounds for license revocation, provided that the licensee has actual or
 constructive knowledge of one or more of the activities listed in the ordinance
 as constituting a public nuisance.  Further, section 8-43(b)(2)(b) provides
 that an "unusually high number of response calls" by law enforcement qualifies
 as an activity from which a public nuisance arises.  In an effort to examine all
 available information relevant to this standard, the circuit court, on remand
 from this court, requested the City to supplement the record with data showing
 the volume and character of calls to all hotels in the City from 2004 to
 2006.[1] 
 The City submitted the requested data, which included calls from April 1, 2004
 through June 16, 2006, the same period covered by the testimony given by
 Lieutenant Randle Evett of the Greenville Police Department in the
 administrative proceedings before the City Manager's hearing officer.  
While the number of response
 calls shown in the supplemental data, i.e., 901 calls, was slightly less than
 the 918 calls previously indicated by Lieutenant Evett, this number nonetheless
 corroborated Lieutenant Evett's testimony that there was an unusually high
 volume of calls to the location when compared to other hotels in the City
 during the period in question.  The number of calls made to Travel Inn, 901,
 was by far the highest in the City.[2] 
 The second highest number of calls made to a hotel in the City was 581, and the
 third highest was 407.  Law enforcement made less than 300 calls to each of the
 other hotels in the City.   
The data also indicated 390
 of the 901 calls to Travel Inn, over forty percent, were considered by the City
 to be "serious."  Singh points to the numbers of serious calls to four
 other hotels in the City: 347; 165; 146; and 112, respectively.  In our view,
 it is reasonable to characterize the 390 "serious" calls made to
 Travel Inn as "an unusually high number."  Further, we agree with the
 City that all of the calls, serious and non-serious, to each hotel potentially
 diverted law enforcement resources from responding to crimes in progress at
 other locations in the community.  Notably, the language in section
 8-43(b)(2)(b) of the Greenville City Code does not differentiate between the
 types of service calls included in the "unusually high number."   
The foregoing data provides
 strong support for City Council's determination that Travel Inn constituted a
 public nuisance requiring license revocation pursuant to section 8-43(b)(2).  Therefore,
 the City's decision to revoke Singh's license was reasonable.  See id. (listing a public nuisance as a ground for revocation, provided the licensee
 has actual or constructive knowledge of one or more of the listed activities
 qualifying as a public nuisance);[3] Gay v. City of Beaufort, 364 S.C. 252, 254, 612 S.E.2d 467, 468 (Ct. App.
 2005) ("Where the city council of a municipality
 has acted after considering all of the facts, the court should not disturb the
 finding unless such action is arbitrary, unreasonable, or an obvious abuse of
 its discretion.").
As evidenced by the minutes
 of the public hearing, City Council carefully weighed the adverse effect of
 revocation on Singh's livelihood against the impact of Travel Inn's operation
 on the public welfare.  City Council attempted to accommodate both
 considerations in a reasonable and fair manner.  City Council acted well within
 its discretion in giving Singh another opportunity to correct the unsafe
 conditions at Travel Inn while providing for an automatic license revocation
 upon deviation from the terms of the conditional business license.  
Further, we find no
 delegation of legislative authority in City Council's directive to the City
 Manager to determine Singh's compliance with the conditions for Travel Inn's
 continued operation.[4] 
 This directive was no different from the
 administrative authority granted to the City Manager under section 8-43(a)(1) of the Greenville City
 Code (2004).  Section
 8-43(a)(1) states: "The city manager . . . shall have authority to deny or
 revoke any business license under the provisions set forth in this
 article."  Singh has not challenged this provision, which is consistent
 with statutory and case law.  See S.C. Code Ann. § 5-13-90 (2004) ("The
 manager shall be the chief executive officer and head of the administrative
 branch of the municipal government.  He shall be responsible to the municipal
 council for the proper administration of all affairs of the
 municipality[.]"); Greenville
 City Code § 2-195(a)(2) (imposing on the City Manager the duty to "[s]ee
 that the ordinances of the city and the laws of the state are enforced therein"); City of Columbia v. Abbott, 269 S.C. 504, 508, 238 S.E.2d 177, 179 (1977) ("It is generally held that the granting of a license is an
 administrative function . . . .").  
Moreover, implicit in City Council's decision to place Singh's
 license on probationary status were the requirements that (1) Travel Inn avoid
 triggering any of the factors establishing a public nuisance under section
 8-43(b)(2) of the Greenville City Code (2004) and (2) the City Manager should
 be guided by those factors, in addition to the special conditions imposed on
 Singh's operation of Travel Inn.  The City Manager's discretion in determining
 compliance with the business license ordinance was properly limited by the
 ordinance's express guidelines for determining whether Singh's operation of
 Travel Inn constituted a "public nuisance."
Singh argues that
 the arbitrary nature of the City Manager's decision resulted from City
 Council's failure to "set a benchmark for the number of calls Mr. Singh
 should not exceed."  However, section 8-43(b)(2)(b) provides a
 sufficiently objective benchmark, i.e., "an unusually high number of
 response calls," that can be determined by comparison with other
 businesses in the community.  Travel Inn met this threshold prior to the
 revocation hearing before City Council.  Accordingly, when City Council granted
 Singh a conditional license, it justifiably set the triggering event for
 automatic revocation as being any deviation from the conditions.  This
 directive left little room for the exercise of judgment by the City Manager. 
 The City Manager was essentially left with the ministerial task of determining
 whether Travel Inn deviated, even once, from the license conditions City
 Council had placed on it.  Therefore, the
 circuit court erred in concluding that City Council improperly delegated
 legislative authority to the City Manager.
Finally, we agree with the
 City that the City Manager's March 30, 2007 decision
 to terminate Singh's probationary license was reasonable.  In Singh I,
 this court stated: "The four incidents that occurred within the month
 after the extension of the conditional license cannot, and should not, be
 viewed in isolation from the 918 other calls for service on which the license
 was initially revoked."  384 S.C. at 371, 681 S.E.2d at 925.  Further, the
 City Manager's March 30, 2007 letter properly focused on the seriousness of the
 four incidents and how they reflected a resumption of the previous nuisance
 pattern from 2004 to 2006 and its adverse effect on the community.  For
 example, on or about March 7, 2007, police found Lucky living at
 Travel Inn despite the previous representation of Singh's counsel that Lucky would
 not be allowed to resume her residence at Travel Inn due to her criminal
 activity there.  On this date, Lucky was arrested and charged with two counts
 of forgery for stealing credit cards from customers at her restaurant,
 "Taste of India," which adjoined Travel Inn.  Police learned that
 prior to her arrest, she had been hiding inside
 the hotel office while talking to deputies on the phone and representing to
 them that she was out of town. 
Singh's argument that he did
 not have full control over decisions affecting Travel Inn's operation until he
 obtained the deed to the property is unavailing.  Singh was the licensee from
 2004 through most of 2006.  On his
 business license applications, Singh listed himself as the owner of the business.  Further, Singh's 2004 agreement with the owner of
 the real property gave him the option to buy the property, and he
 consistently made payments toward ownership of the property.  In December 2004,
 a representative of the property's owner advised the business license
 supervisor for the City that the property owner was "no longer responsible
 for the license because [Singh] had an option to buy."  Singh does not
 point to any evidence in the record showing precisely how the prior property
 owner interfered with Singh's managerial decisions or impeded Singh's investment
 in improvements necessary to maintain a  nuisance-free business.
Based
 on the foregoing, we reverse the circuit
 court's decision and uphold the City's decision to revoke Singh's privilege of operating Travel Inn so
 that the City may fulfill its duty to protect
 the public.  See Carter v. Linder, 303 S.C. 119, 122, 399 S.E.2d 423, 424 (1990)
 ("A license tax upon persons and businesses is an excise tax on the privilege of doing business . . . .") (emphasis added); cf. Summersell
 v. S.C. Dep't of Pub. Safety, 334 S.C. 357, 366, 513 S.E.2d 619, 624 (Ct. App.
 1999), vacated in part on other grounds, 337
 S.C. 19, 522 S.E.2d 144 (1999) (holding that a driver's license is not a property right but a mere privilege subject to
 reasonable regulations under the police power in the interest of the public
 safety and welfare and such a privilege is always subject to revocation or
 suspension for any cause relating to public safety). 
 
  REVERSED.
PIEPER, KONDUROS, and
 GEATHERS, JJ., concur.

[1] Because the City did not object to the circuit
 court's request to supplement the administrative record, we express no opinion
 on the propriety of the request.
[2] In his testimony before the City Manager's hearing
 officer, Lieutenant Evett estimated that
 approximately ten percent of the calls originated from Travel Inn management. 
 He also stated that in 2004, he had spoken to Singh's daughter, Maninder Kaur,
 a/k/a "Lucky," who was acting as manager of Travel Inn, about the high
 number of calls.  Subsequently, however, the number of calls for service
 increased.  Two of the numerous calls requiring incident reports resulted in
 criminal charges against Lucky for selling crack-cocaine in March 2006.  On
 another occasion, Lucky gave a statement in which she admitted fabricating an
 armed robbery at Travel Inn in May 2006 for the alleged purpose of obtaining
 bail money for a friend. 
[3] The record contains ample evidence showing, at the
 very least, Singh's constructive knowledge of the number of police response
 calls to Travel Inn during the period in question.
[4] Section 5-13-30 of the
 South Carolina Code (2004), which applies to the council-manager form of
 government, provides that all legislative powers of a municipality and the
 determination of all policy matters shall be vested in the municipal council. 
 Our supreme court interpreted section 5-13-30 in Todd v. Smith and
 stated that the city council for the City of Myrtle Beach did not have the
 authority to delegate matters of policy and the city manager did not have the
 authority to set city policy.  305 S.C. 227, 231, 407 S.E.2d 644, 646-47
 (1991).  In the present case, because this court may analyze the question of the
 alleged delegation of legislative authority under section 5-13-30, we need not
 address whether Article I, section 8 of the South Carolina Constitution,
 addressing separation of powers, applies to municipalities.  See Futch
 v. McAllister Towing of Georgetown, Inc., 335 S.C. 598, 613, 518 S.E.2d
 591, 598 (1999) (noting an appellate court need not address an appellant's
 remaining issues when its determination of a prior issue is dispositive).