Eleanor **TURNER**, Administratrix of the Estate of Durward G. Turner, Durward G. Turner, Jr., David Turner and Ellen Sue Turner

v.

Sherman **COLLINS**, Francis Fitzmaurice and the State of Maine.

Supreme Judicial Court of Maine.

Aug. 31, 1978.

**538**

Pierce, Atwood, Scribner, Allen, Smith & Lancaster by John J. O'Leary, Jr. (orally), Ralph I. Lancaster, Jr., Portland, for plaintiffs.

Donald G. Alexander, Deputy Atty. Gen. *(orally)*, Augusta, Richardson, Hildreth, Tyler & Troubh by Ronald D. Russell, Portland, for defendants.

Before POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

This is a proceeding in connection with a civil action brought in relation to an automobile collision which occurred on July 7, 1971 on a State maintained highway in Farmington. The action was commenced pursuant to a special Resolve of the Maine Legislature authorizing the plaintiffs and the individual defendants herein to bring a civil action against the State of Maine with the limitation that

> "[a]ny recovery in said action, including any adjudicated right of contribution or indemnification, shall not be in excess of $250,000 including costs."

On February 2, 1976, after a jury trial in the Superior Court (Franklin County), judgments amounting to $435,187.50 were entered against the State in accordance with the jury verdicts. On January 26, 1977, this Court denied an appeal, taken by the parties in whose favor judgment had been awarded (the plaintiffs and defendant Fitzmaurice herein), in which the Court was asked to abrogate applicability of the sovereign's immunity to actions sounding in tort, thereby to establish a right of recovery of the full amount of the judgments entered against the State. *Turner v. Collins*, Me., 368 A.2d 1160 (1977).

The aspect of the proceeding with which we are now concerned developed when the State, on February 17, 1977, moved the Superior Court for a declaratory adjudication in regard to the State's rights and liabilities under the judgments entered on February 2, 1976. The State sought a declaration that in no event was it liable to pay more than $250,000.00. Thereafter, the Superior Court decided that the State had not waived its sovereign immunity for amounts of the judgment in excess of the ceiling of $250,000.00 imposed by the Legislative Resolve. Ruling that the failure of the State to plead sovereign immunity as an affirma-

tive defense did not result in any waiver of the immunity in view of the existence of the Legislative Resolve, the Court noted that judgments on the jury verdicts in excess of $250,000.00 were entered as a matter of course with no intent to award plaintiffs more than the ceiling set forth in the Resolve. The Superior Court Justice further ruled, however, that the State was obligated to pay $38,273.97 as interest on the $250,000.00 for which the State was liable.

The State has appealed from this judgment claiming that the Court erred in allowing a recovery of interest beyond the $250,000.00 paid into court by the State on March 3, 1977. Plaintiffs and defendant Fitzmaurice have cross-appealed claiming that the State has waived sovereign immunity in excess of the $250,000.00 limitation of the Resolve and therefore that they are entitled to recover the full amount of the $435,187.50 in judgments.

We sustain the State's appeal and deny the cross-appeals.

### 1.

As here relevant, the 1975 Legislative Resolve provides:

"[The parties are authorized] to assert any and all causes of action against the State of Maine, arising out of said accident, including, without limitation, a claim for contribution and indemnification. . . . [T]he conduct of said action shall be according to the practices of actions and proceedings between parties in the said Superior Court and the liabilities of the parties and elements of damages, if any, shall be the same as the liabilities and elements of damages between individuals. . . . Any judgment that may be recovered against the State of Maine in said civil action shall be payable from the General Highway Fund on final process issued by said Superior Court or, if appealed, the Supreme Judicial Court, and costs may be taxed for the parties as they may recover in said action. Any recovery in said action, including any adjudicated right of contribution or indemnification, shall not be in excess of $250,000 including costs."

The Justice presiding in this action ruled that the State was obligated to pay interest on $250,000.00 of the judgments by virtue of the provision in the Resolve that the

"conduct of said action shall be according to the practices of actions and proceedings between parties in the said Superior Court and the liabilities of the parties and elements of damage, if any, shall be the same as the liabilities and elements of damages between individuals."

■ In this regard, the presiding Justice committed error. The provision in the Resolve relating to the ordinary "conduct" of an action and to the "liabilities of the parties and elements of damage" is qualified in the same paragraph of the Resolve by the express provision that "[a]ny recovery in said action, . . . shall not be in excess of $250,000 including costs." We take the Legislature's use of the broad term "recovery" in fixing a ceiling amount, contrasted with its prior generalized references to "liabilities and elements of damages", as manifesting intendment to place an absolute ceiling not merely on the amount of the judgment but rather on the total amount of money which the State might have to pay in the action authorized by the Resolve.

This interpretation is supported by the Legislative history. As originally drafted, the Resolve provided that

"[a]ny recovery in said action, . . . shall not be in excess of $505,000 including costs."

When the proposed Resolve was amended to reflect the present $250,000.00 figure, the "Fiscal Note" to the Committee Amendment stated:

"In the event that a judgment is recovered against the State of Maine in the civil action authorized by this resolve, the maximum amount which may be paid out of the General Highway Fund in payment of such a judgment is $250,000."

As further explained in the "Statement of Fact" which was attached to the amendment,

"[t]he purpose of this amendment is to correct, clarify and to reduce the maxi-

mum amount of recovery to $250,000 which shall be paid out of the General Highway Fund."

We conclude, therefore, that the Resolve fixes $250,000.00 as the absolute maximum amount of money the State would have liability to pay in this special area of State expense. For this reason, the Superior Court erred in ruling that the parties could recover $38,273.97 as interest on the $250,000.00 of the judgments for which the State was liable.

## 2.

In their cross-appeals, plaintiffs and defendant Fitzmaurice argue that the State waived the bar of sovereign immunity and thus is obligated to pay the full amount of the $435,187.50 in judgments entered against it. Specifically, they say (1) sovereign immunity is a matter of personal jurisdiction which the State waived by making a general appearance; (2) sovereign immunity is an affirmative defense which the State waived by failing to plead it; or (3) the Resolve expressly or impliedly authorized counsel for the State to waive the sovereign immunity defense.

■ As to the first two contentions, our recent decision in *Drake v. Smith, Commissioner,* Me., 390 A.2d 541 (1978) definitively settles that the bar of sovereign immunity as to the excess beyond the $250,000.00 legislative authorization could not be waived by counsel's entry of a general appearance on behalf of the State or be deemed lost through the procedural default of counsel's having failed to plead affirmatively the applicability of sovereign immunity as to the recovery in excess of $250,000.00.

The determinative question, then, is that raised by the third contention of the cross-appellants, whether the language of the Resolve authorized the State through its officers to waive the bar of sovereign immunity. We conclude that the Legislative Resolve not only fails to provide any authority for a full waiver of sovereign immunity but also states, by necessary implication, that the doctrine of sovereign immunity be operative in this case as to amounts in excess of $250,000.00.

■ The directive in the Resolve that the action be conducted according to the practices of actions and proceedings between individual parties in the Superior Court must be read in the context of the express overall limitation of "any recovery" to $250,000.00. As we have already decided, this latter provision placed an absolute ceiling upon any amount that the State could be made to pay. The State's position throughout the proceedings was that, as the *exclusive* charter delineating the scope of the State's liability, the Resolve had carved out a limited exception to the State's immunity, as sovereign, thereby affirming that the immunity was preserved. That this was a correct theory was implicitly confirmed in our prior decision in this proceeding, *Turner v. Collins,* supra, which held that the sovereign's immunity continued applicable to this case despite the abrogation of it effected by *Davies v. City of Bath,* Me., 364 A.2d 1269 (1976).

The entry is:

Appeal of the State sustained; judgment set aside insofar as it declares that the State must pay interest in addition to its $250,000.00 in liability on the judgments.

Cross-appeals are denied; judgment that "[t]he State is not liable to pay more than $250,000 which sum has already been paid" is affirmed.

McKUSICK, C. J., did not sit.