24174

Collette WASHINGTON, Annette White, and Josephine Washington, Respondents v. Gregory WHITAKER and The City of Charleston, Appellants.

(451 S.E. (2d) 894)

Supreme Court

*Jimmy Stuckey*, of *Stuckey and Kobrovsky*, Charleston, *for appellants.*

*J. Kevin Holmes*, of *Steinberg Law Firm* and *Jay T. Gouldon* of *Stoney and Gouldon*, Charleston, *for respondents.*

*Vinton D. Lide* of *Lide, Montgomery and Potts*, Columbia, *for amicus curiae, South Carolina Law Enforcement Officers Ass'n.*

Heard Feb. 16, 1994.

Decided Dec. 19, 1994; Reh. Den. Jan. 18, 1995.

CHANDLER, Acting Chief Justice:

Gregory Whitaker (Officer Whitaker) and The City of Charleston (City) appeal a jury verdict awarded to Respondents for violations of their Fourth Amendment rights.

We affirm.

## FACTS

Respondent Josephine Washington lives at 37H Flood Street with her daughters, Collette and Lakeisha, and Collette's children.

At approximately 11:00 p.m., on February 16, 1989, a team of City police officers, led by Officer Whitaker, and including seven undercover officers and one uniformed officer, conducted a "drug raid" at 37H Flood Street. The raid was made pursuant to a warrant authorizing a search of the premises and of any person therein for illegal drugs. Officer Whitaker obtained the warrant based upon his affidavit that he observed a confidential informant enter apartment 37H on two occasions and purchase cocaine. The confidential informant told Officer Whitaker that he had purchased the drugs from a black male named "Dean."

On the night in question, undercover officers knocked on the door of 37H and asked for Dean. From an upstairs window, Collette Washington, who was five months pregnant, informed them that Dean lived next door.[1] She also threatened to call the police. Josephine Washington answered the front door and the officers entered the apartment. They gathered into the living room the occupants of the apartment, including Josephine, Collette, Collette's friend Reginald Harley, Lakeisha, who was twelve years old, Annette, and Annette's nine-year-old daughter Jacquetta. Collette and Annette both had infant children who were left sleeping upstairs.

After the police searched the apartment, no illegal drugs nor any evidence of drugs were found.[2] Notwithstanding, Respondents were taken individually to the bathroom by a female officer for a strip search. They were forced to disrobe and perform various movements, including bending over and lifting their buttocks. It was alleged that twelve-year-old

---

[1] Josephine and Collette testified that new tenants had moved next door, including a man named Dean, and that people were constantly knocking on their door asking for Dean.

[2] A box of "zip-lock" bags was found in Collette's bedroom. We disagree with the Dissent that these bags may be considered evidence of drug dealing. it is noteworthy that the drugs sold to the informant by "Dean" were packaged in glassine, not plastic, bags. Moreover, Collette explained that she used the bags for her children's lunches and for their wet clothing. Given the extensive and varied use of "zip-lock" bags in the modern household, the bags, without more, do not constitute evidence of illegal drugs.

Lakeisha was also strip searched and that the officers attempted to strip search Jacquetta but, due to her mother's protestations, she was given a pat-down search.[3] For reasons not appearing in the record, Harley, the only male present, was not subjected to a strip search. No narcotics were discovered.

Respondents[4] then instituted this action against City and Officer Whitaker, alleging Fourth Amendment violations under the Tort Claims Act[5] and 42 U.S.C. § 1983. The jury returned verdicts for Respondents as follows:

> Josephine Washington: actual damages of $1500
>> punitive damages of $75,000 against City and $5,000 against Officer Whitaker;
> Collette Washington: actual damages of $1000
>> punitive damages of $75,000 against City and $5,000 against Officer Whitaker;
> Annette White: actual damages of $100
>> punitive damages of $75,000 against City and $5,000 against Officer Whitaker.

The City and Officer Whitaker appeal.

## ISSUES

1. Was City entitled to a directed verdict?
2. Should the punitive damages awards have been stricken or set aside?
3. Was Officer Whitaker entitled to the defense of qualified immunity?
4. Was Officer Whitaker entitled to a directed verdict?
5. Should Juror Nesbit have been disqualified?
6. Was evidence concerning drug activity in Respondents' neighborhood admissible?
7. Were Appellants entitled to a mistrial?
8. Was Magistrate Koontz improperly questioned?
9. Was Appellants' Request to Charge that a "search conducted with a valid search warrant is presumed to be both valid and reasonable" improperly refused?

---

[3] Appellants dispute that any children were searched.

[4] In suits by Lakeisha and Jacquetta the jury was unable to reach verdicts, resulting in mistrials.

[5] S.C. Code Ann. § 15-78-10, *et. seq.* (Supp. 1992).

## DISCUSSION

### A. *Directed Verdict for City*

City argues that it was entitled to a directed verdict on the 42 U.S.C.A. § 1983 action. We disagree.

42 U.S.C.A. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The U.S. Supreme Court has held that local governing bodies, such as City, are liable under § 1983 for constitutional violations arising from the government's implementation of policy or custom. *Monell v. Dept. of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. (2d) 611 (1978). The plaintiff must show that such policy or custom amounted to a "deliberate indifference" to their constitutional rights. *Pembaur v. Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed. (2d) 452 (1986); *Todd v. Smith*, 305 S.C. 227, 407 S.E. (2d) 644 (1991). The failure to adequately train is actionable under § 1983. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed. (2d) 412 (1989).

Here, Respondents submitted evidence that, where individuals were suspected of concealing narcotics, City condoned the practice of strip searching, notwithstanding its police officers received no training as to how and when to conduct the searches. Moreover, no specific policy concerning strip searches was established.

It was the jury's province to determine from this evidence whether the City's failure to train or establish policy on strip searching constituted "conscious indifference" to Respondents' Fourth Amendment rights. Accordingly, the motion for directed verdict was properly denied. *Waites v. S.C. Windstorm and Hail Under. Assoc.*, 279 S.C. 362, 307 S.E. (2d) 223 (1983) (this Court is not concerned with the weight of the evi-

dence, but whether there is any evidence from which the jury is warranted in making a finding).

## B. *Punitive Damages*

City contends that: (1) the request for punitive damages should have been stricken from the complaint pursuant to *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed. (2d) 616 (1981);[6] and (2) the punitive damage awards should have been set aside since they were unduly excessive and against the weight of the evidence. We disagree.

First, City waived any objection to the propriety of ■ punitive damages against a municipality. At trial, City motioned to strike punitive for the § 1983 action on the grounds of insufficient evidence. This motion was denied and City *itself* submitted a proposed punitive damage charge. The *City of Newport, supra,* was not cited or argued until City made motion for JNOV.

Unlike the federal courts, this Court does not recognize a "plain error" rule. Rather, it is well settled that a contemporaneous objection must be made to preserve an argument for appellate review. *Taylor v. Bridgebuilders, Inc.*, 275 S.C. 236, 269 S.E. (2d) 337 (1980) (where no objection made to as to applicability of statute until motion for JNOV, issue not preserved). Here, City failed to raise a contemporaneous objection to the punitive damages pursuant to *City of Newport* and, therefore, cannot do so upon appeal. *Talley v. S.C. Higher Educ. Tuition Grants Committee*, 289 S.C. 483, 347 S.E. (2d) 99 (1986) (challenge to constitutionality of Act was procedurally barred).

In so holding, we overrule the antiquated rule that ■ sovereign immunity is a jurisdictional bar and, accordingly, cannot be waived. *See Lowry v. Commissioners of Sinking Fund*, 25 S.C. 416, 1 S.E. 141 (1886); *Hammarskold v. Bull*, 9 Rich. 474 (1856); *Reed v. Medlin*, 284 S.C. 585, 328 S.E. (2d) 115 (Ct. App. 1985). We join those jurisdictions which hold that sovereign immunity is an affirmative

---

[6] *City of Newport, supra,* holds that a municipality is immune from punitive damages.

defense that must be pled.[7] This accords with modern precedent of this Court, holding that subject matter jurisdiction is met if the case is brought in the court which has the authority and power to determine the type of action at issue. *See Dove v. Gold Kist, Inc.,* — S.C. —, 442 S.E. (2d) 598 (1994).

Second, the punitive damage award against City was not unduly excessive or against the weight of the evidence. The trial judge conducted a posttrial review pursuant to *Gamble v. Stevenson*[8] and determined that the award was appropriate given the facts of the case. We affirm his findings as to punitive damages.[9]

### C. *Officer Whitaker—Qualified Immunity*

Officer Whitaker contends he was entitled to the defense of qualified immunity. We disagree.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed. (2d) 396, 410 (1982). *See also Cone v. Nettles,* 308 S.C. 109, 417 S.E. (2d) 523 (1992). Thus, the crux of this issue is whether Officer Whitaker violated Respondents' "clearly established" Fourth Amendment rights, "the contours of which [were] sufficiently clear in light of pre-existing law that a reasonable public official would know that his actions violate the right." *Timberlake by Timberlake v. Benton,* 786 F. Supp. 676, 685 (M.D. Tenn. 1992).

The Fourth Amendment of the United States Constitution guarantees that citizens be free from *unreasonable* searches

---

[7] *See Davis v. San Antonio,* 752 S.W. (2d) 518 (Tex. 1988); *Rubino v. N.Y.,* 145 App. Div. (2d) 285, 538 N.Y.S. (2d) 547 (1989, 1st Dept.); *Gauvin v. New Haven,* 187 Conn. 180, 445 A. (2d) 1 (1982); *Fitzpatrick v. Chicago,* 112 Ill. (2d) 211, 97 Ill. Dec. 419, 492 N.E. (2d) 1292 (1986); *Morris v. Chicago,* 130 Ill. App. (3d) 740, 86 Ill. Dec. 77, 474 N.E. (2d) 1274 (1985); *Kolitch v. Lindedahl,* 100 N.J. 485, 497 A. (2d) 183 (1985); *McShain v. Evesham,* 163 N.J. Super. 522, 395 A. (2d) 251 (1978); *Swartz v. Masloff,* 62 Pa. Cmwlth. 522, 437 A. (2d) 472 (1981); *Maurer v. Oakland Cnty.,* 201 Mich. App. 223, 506 N.W. (2d) 261 (1993).

[8] 305 S.C. 104, 406 S.E. (2d) 350 (1991).

[9] The Dissent argues that the Court's *Gamble* review was insufficient as to Officer Whitaker. This argument was not raised at trial, in the appellate briefs, or at oral argument to this Court. We will not reach it *ex mero motu.*

and seizures. "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." *Schmerber v. State of California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed. (2d) 908 (1966).

■ Strip searches are "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, [and] signifying degradation and submission." *Mary Beth G. v. City of Chicago*, 723 F. (2d) 1263, 1272 (7th Cir. 1983) [quoting *Tinetti v. Wittke*, 479 F. Supp. 486, 491 (E.D. Wis. 1979), *affirmed* 620 F. (2d) 160 (7th Cir. 1980)]. Strip searches may be necessary in a custodial setting where an individual has decreased expectations of privacy and the State has a legitimate security interest. However, beyond the custodial context, strip searches must be premised upon a clear showing of exigent circumstances.

■ A warrant to search does not absolve an officer from liability under § 1983. Rather, the focus is whether the warrant was executed in a reasonable manner. *Duncan v. Barnes*, 592 F. (2d) 1336 (5th Cir. 1979).

■ Here, the following facts demonstrate that Officer Whitaker knew or should have known that the strip search was not reasonable and, if unreasonable, violated Respondents' Fourth Amendment rights:

1. Immediately upon their arrival at 37H Flood Street, the officers were told that Dean lived next door;
2. Although *only a male* individual named Dean was suspected of selling drugs, the officers searched *only the women* present;
3. No "pat down" search was performed prior to the strip search;
4. The strip search was ordered even though no narcotics or evidence thereof were discovered in the search of the apartment;
5. Steven Grooms, an ex-police officer, testified as an expert that a strip search was not justified under the facts of this case;
6. Charleston Chief of Police, Reuben Greenberg testified that, under the facts of record, he would not have ordered a strip search.

Although Officer Whitaker was acting under the authority of a search warrant, he exceeded the scope of the warrant, he exceeded the scope of the warrant by ordering the strip searches after the search of the apartment revealed no evidence of narcotics, or of the presence of Dean.[10] There were no exigent circumstances or probable cause justifying such an intrusive search. *Duncan, supra; Hill v. McIntyre,* 884 F. (2d) 271 (6th Cir. 1989).

We affirm the denial of summary judgment as to qualified immunity.

### D. *Directed Verdict—Officer Whitaker*

Officer Whitaker contends that, inasmuch as he did not conduct the strip searches, he was entitled to a directed verdict. We disagree.

Under § 1983, supervisory liability may be established upon a showing that the defendant implicitly authorized, approved or knowingly acquiesced to the strip search. *Timberlake, supra.* There is evidence of record that Officer Whitaker supervised the execution of the warrant and that he ordered the searches. Accordingly, there was evidence from which the jury could find that Officer Whitaker was directly responsible for the strip searches. Directed verdict was correctly denied. *Waites, supra.*

### E. *Juror Nesbit*

On the third day of trial, Juror Nesbit told the trial judge that she had heard a radio news announcement concerning the case, summarized as follows:

**Juror:** They said something about the case was being tried where the police they assume went to the wrong house and something about Ms. White and the daughter being strip searched. That's all.

\* \* \* \* \* \*

All I remember hearing is that the case was being tried about a police making a drug bust and about Ms. white and her daughter being strip searched. That's all I heard.

---

[10] Nowhere in the Dissent is there citation of the above specific, and critical, evidence of the reasonableness of the search.

\* \* \* \* \* \*

They said that it seemed like a wrong residence like it was the wrong residence or something like that they said.

The trial judge denied Appellants' motion to exclude Juror Nesbit from the jury after ascertaining that she would "take out of [her] mind what [she] heard on the radio as if [she] never even heard it." She advised the court that she could be a fair and impartial juror and would decide the case solely on the evidence presented and the charge on the law.

It is within the discretion of the trial court to determine whether bias results from a juror's reception of outside information concerning the case being tried. *State v. Wasson*, 299 S.C. 508, 386 S.E. (2d) 255 (1989); *U.S. v. Jones*, 907 F. (2d) 456 (4th Cir. 1990), *cert. denied; Johnson v. U.S.*, 498 U.S. 1029, 111 S.Ct. 683, 112 L.Ed. (2d) 675, *rehearing denied*, 498 U.S. 1116, 111 S.Ct. 1028, 112 L.Ed. (2d) 1109 (1991).

Here, Juror Nesbit stated, unequivocally, that she would not permit the radio broadcast to influence her decision. Accordingly, the motion to remove Juror Nesbit from the jury was properly denied.

## F. *Evidence of Drug Activity*

Appellants contend that evidence of "a lot of drug activity" at the housing complex where 37H is located was relevant to prove that Officer Whitaker's conduct was reasonable. We disagree.

The admission of evidence is within the sound discretion of the trial court and its ruling will not be disturbed on appeal absent a clear abuse of that discretion. *Hofer v. St. Clair*, 298 S.C. 503, 381 S.E. (2d) 736 (1989). Evidence is relevant and admissible if it tends to establish or to make more or less probable some matter in issue. *Id.; Associate Management, Inc. v. E.D. Sauls Const. Co.*, 279 S.C. 219, 305 S.E. (2d) 236 (1983).

The evidence was properly excluded. Respondents' misfortune of living in a high crime area does not make it more probable that they deal drugs, nor does it lessen their constitutional rights. There was no abuse of discretion in the trial judge's exclusion of this evidence.

## G. *Mistrial*

Josephine Washington, in reply testimony, mentioned that an insurance company had contacted her:

Q. Okay, after speaking with Mr. Goldberg did someone from the—did someone contact you to ask you—from the City to ask you for a statement as to what had happened?

A. The insurance company. Excuse me. It was—well, I know that someone call and talk to me at Mr. Goldberg office.

Appellants argue that their motion for mistrial based on this testimony should have been granted since the mention of insurance contributed to an irrational award of punitive damages. We disagree.

The decision to declare a mistrial rests within the sound discretion of the trial court and its ruling will not be reversed absent an abuse of that discretion. Where liability insurance has been injected at trial, the party complaining must establish prejudice. *Tucker v. Reynolds*, 268 S.C. 330, 233 S.E. (2d) 402 (1977) (where inadvertent mention of insurance did not prejudice defendant).

Here, Josephine Washington's mere mention of insurance was not intentional or calculated to influence the jury. The jury was instructed to draw no any inferences whatsoever from the word "insurance." Further, the punitive damage award was found to be supported by the record. There was no abuse of discretion.

## H. *Magistrate Koontz*

Appellants contend that the trial judge erred in allowing the following line of questioning of Magistrate Koontz, who issued the search warrant:

Q. Had Gregory Whitaker come to your Court on this case and said one time I made a buy of two one-hundredths of a gram of cocaine or a confidential—we don't know who he is—two one-hundredths of a gram, and I want to go in there in the house and I want to strip all the clothes off a grandmomma, daughter, children in that house, would you have . . .

* * * * * *

Q. Would you have allowed that?

A. First of all, Mr. Whitaker wouldn't have asked me that, and, no, I would not have.

As stated above, the admission of evidence is within the discretion of the trial court and its finding will not be disturbed on appeal absent an abuse of that discretion. Evidence is relevant and admissible if it tends to establish or to make more or less probable some matter in issue. *Hofer, supra; Assoc. Management, supra.*

Magistrate Koontz was being questioned concerning the scope of the warrant she issued to Officer Whitaker. Since whether Officer Whitaker exceeded the scope of the warrant was an ultimate issue, there was no abuse in allowing the question.

### I. *Jury Charge*

Appellants requested that the jury be given the following charge:

> A search without a warrant is presumed to be invalid and unreasonable but a search conducted with a valid search warrant is presumed to be both valid and reasonable.

The judge refused the charge, holding that it applied to suppression of evidence in criminal cases. We agree.

In a civil case, as here, a search warrant does not shield officers from civil liability under § 1983 if the warrant was executed in an unreasonable manner. *Galluccio v. Holmes*, 724 F. (2d) 301 (2d Cir. 1983); *Hill, supra.*

Jury instructions must be read in light of the entire charge and the facts of the case. *Cox v. Lund*, 286 S.C. 410, 334 S.E. (2d) 116 (1985). Under the facts here, Appellants were not entitled to the requested charge.

Affirmed.

FINNEY, TOAL and MOORE, JJ., concur.

BRUCE LITTLEJOHN, Acting Associate Justice, dissenting in separate opinion.

LITTLEJOHN, Acting Associate Justice (dissenting):

I respectfully dissent and would reverse the judgment of the trial court as relates to both actual and punitive damages against both defendants, Officer Gregory Whitaker and the City of Charleston.

The search warrant under which Officer Whitaker proceeded to 37H Flood Street was valid, and I do not understand counsel for the plaintiffs to contend otherwise. That warrant authorized him to search not only the premises but also ". . . *any person* and their vehicles present during the execution of the warrant." (Emphasis added.)

The warrant was procured because a reliable informant gave the officer reason to seek a warrant and search for cocaine.

Officer Whitaker and other male officers proceeded to search the premises downstairs and upstairs. They found no cocaine but found sandwich bags oftentimes used for dispensing cocaine products upstairs in a bedroom. Having found no cocaine at the places where cocaine would normally be concealed, Officer Whitaker proceeded to look for cocaine on the person of the three plaintiffs herein. Inasmuch as the plaintiffs are all female, he summoned female Officer Connolly who took the plaintiffs into a bathroom one at a time, had them disrobe, and searched them without invading any bodily cavity. The search of a body cavity is required by medical personnel. Officer Connolly used a flashlight and searched for drugs at those places on plaintiffs' bodies which might conceal cocaine or other drugs.

It was the testimony of Chief of Police Reuben Greenberg that ". . . experience has shown me that a person might have it—I've seen people with items of narcotics or rings concealed in their ears, in their hair, under their armpits, around their waist, behind their butt, behind the toes of their feet with their socks on and their shoes. To simply go into their pockets would be insufficient. I would say the person hadn't really been searched. * * * On some occasions they have even swallowed the particular items and passed it through their bowels or tried to retrieve it later through vomiting."

The theory of the plaintiffs' case is that Officer Whitaker directed female Officer Connolly to perform the search. She is not a party defendant, and the only reasonable inference to be drawn from the evidence is that she performed a strip search

in a proper manner. The question then becomes: Was the action of Officer Whitaker reasonable under all of the circumstances of the case.

The Constitution of South Carolina, Article I, § 10, and the Constitution of the United States as set forth in the Fourth Amendment declare the rights of people to be secure in their papers, houses and effects against *unreasonable* search and seizure.

Under all of the facts of this case, I would hold that the search was not unreasonable. In determining whether the actions of police officers are reasonable or unreasonable, we must take into consideration the magnitude of the problem with which police action is designed to deal. It is common knowledge that all governmental entities, including the United States government, are plagued by drug problems. The supply of drugs and the use thereof has multiplied much more rapidly than the capacity of the police, courts, and prisons to deal with it. It is inescapable that in the light of the multitude of search warrants that are issued and executed, occasionally for various reasons, nothing illegal will be found. Drug dealers are known to conceal drugs which may not be found and have been known to flush drugs down the commode or toss them out a window. Police officers know this. The fact that one might be the target of an unproductive search is one of the prices we pay for citizenship. Even so, searches must not be carried out in an unreasonable manner.

If the sandwich/cocaine baggies had been found in the kitchen, an explanation of their use might be more plausible, but sandwich bags would normally not be found in a bedroom upstairs.

There is nothing in the record before us to warrant the conclusion that either Officer Whitaker or the policy-making body for the City of Charleston acted with deliberate indifference to the rights of the plaintiffs. On the other hand, it is easily detected that both the City of Charleston and Officer Whitaker and his associates were attempting to deal with drug problems difficult to handle and escalating in difficulty constantly.

When Officer Whitaker did not find the drugs he had reason to believe were on the premises, he next sought to find them where the warrant permitted him to look—that is to search the persons. The warrant did not differentiate be-

tween search of clothing and strip searching. It authorized a search of persons.

While Officer Whitaker had substantial training to prepare him for his work, we must keep in mind that police officers make mistakes same as lawyers and judges. The officer must act promptly without the benefit of attorney and judge training. They are not lawyers or judges. They do not have, as do judges, the benefit of cool reflection, deliberation, and research in air-conditioned comfort where time is not of the essence. It would be folly to have required Officer Whitaker to go back to the magistrate and procure an additional warrant authorizing a strip search. In the interim, if drugs were in the area, they would have been destroyed.

When a search warrant is sought for illicit contraband drugs, the officer never knows in advance whether a strip search will or will not be desirable. The reasonableness of a strip search must be determined in the light of observations on the premises. Strip searches are not illegal per se.

There was involved discretionary action on the part of Officer Whitaker, and the fact that other officers might not have pursued the search in the same way is not controlling.

In the often quoted case of *McCall v. Batson*, 285 S.C. 243, 329 S.E. (2d) 741 (1985) abolishing sovereign immunity, this Court, speaking through Associate Justice (later Chief Justice) Ness, aptly said:

> We hold the abrogation of the rule will not extend to legislative, judicial and executive acts by individuals acting in their official capacity. These discretionary activities cannot be controlled by threat of tort liability by members of the public who take issue with the decisions made by public officials. We expressly decline to allow tort liability for these discretionary acts. The exercise of discretion includes the right to be wrong.

I am impressed by the very able brief of Attorney Vinton D. Lide, appearing as a friend of the Court Amicus Curiae, filled on behalf of the South Carolina Law Enforcement Officers Association. I agree with the argument in that brief to the effect that Officer Whitaker, and in turn the City of Charleston, should be exonerated from liability because of qualified immunity. He argues:

In *Bell v. Wolfish*, 44 U.S. 520, 99 S.Ct. 1861, 60 L.Ed. (2d) 447 (1979), the Supreme Court upheld visible body cavity searches and held that:

> The test of unreasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against invasion of the personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it was conducted, the justification for initiating it and the place in which it is conducted. See *id.* at 559, 99 S.Ct. at 1884.

I would hold that the judge should have granted the motion for a directed verdict as to both defendants for both actual and punitive damages based solely on the evidence.

## IN RE: PUNITIVE DAMAGES

As indicated herein, I am of the opinion that neither actual nor punitive damages should be allowed. The judge should have directed a verdict based on the evidence. As relates to punitive damages, there are additional reasons such should not be allowed. Briefly stated: The law simply prohibits punitive damages against the city. The trial judge correctly ruled as a matter of law that punitive damages could not be recovered under the South Carolina Tort Claims Act.

The Court charged the jury that it could award punitive damages under the 1983 cause of action. At the posttrial motion stage of the proceedings, both attorneys and the judge admitted that the case of *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed. (2d) 616 (1981) held that a City such as Charleston could not be liable for punitive damages under a 1983 claim. From that opinion I quote:

> In sum, we find that considerations of history and policy do not support exposing a municipality to punitive damages for the bad-faith actions of its officials. Because absolute immunity from such damages obtained at common law and was undisturbed by the 42nd Congress, and because that immunity is compatible with both the pur-

poses of § 1983 and general principles of public policy, we hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983. Accordingly, the judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

Prior to *McCall, supra,* no damages whatsoever were permitted against governmental entities in South Carolina. After *McCall,* the Legislature dealt with the problem and sanctioned actions for actual damages against governmental entities but specifically declared the public policy of the state in § 15-78-120(b) as follows:

> No award of damages under this chapter shall include punitive or exemplary damages or interest prior to judgment.

Here we have the unusual situation of the Court permitting a jury to award punitive damages against the City of Charleston when the General Assembly has said that such are not recoverable under our South Carolina Tort Claims Act, and the United States Supreme Court has said that punitive damages are not recoverable under a 1983 claim.

While recognizing that punitive damages are not recoverable under any theory involved in this proceeding, the judge explained his reasoning as stated from the bench as follows:

> . . . And while it may be against public policy to have punitive damages, while it may be something that is not properly submitted to a jury under the City of Newport case, it is also a public policy for the state of South Carolina not to have to pay for trials twice, when they can avoid it. And so that is another public policy. That costs the state of South Carolina money, every time you have to try a case twice.

At that point a JNOV should have been granted at least as to punitive damages. A new trial was not mandated.

I disagree with that portion of the majority opinion which holds that the defendants waived any objection to the propriety of punitive damages by submitting a proposed punitive

damages charge. At the time the request was submitted to the court, the judge had already indicated that he would allow the jury to award punitive damages. That which the defendants requested was in an effort to mitigate punitive damages and/or to persuade the jury to disallow.

## WAIVER AND JURISDICTION

The majority opinion holds: "First, city waived any objection to the propriety of punitive damages against a municipality." The ruling is made largely on the ground that Rule 51 of the South Carolina Rules of Civil Procedures requires counsel to object to charges made so as to assist the judge in correctly stating propositions of law. If objection is not made, an error is said to have been waived. Overlooked is the general proposition of law that governmental immunity, which involves a matter of public policy, may not be waived under South Carolina law.

In order to eliminate the jurisdictional issue, the majority opinion holds that jurisdiction may be waived. In doing so, it would overrule well established law declared in *Lowry v. Commissioners of Sinking Fund*, 25 S.C. 416, 1 S.E. 141 (1886); *Hammarskold v. Bull*, 9 Rich. 474 (1856); and *Reed v. Medlin*, 284 S.C. 585, 328 S.E. (2d) 115 (Ct. App. 1985). The opinion holds that sovereign immunity is an affirmative offense and must be pled. It overlooks the fact that at the time the pleadings were filed in this case and at the time the trial was held, *Lowry* was the law of this state. In that opinion, Justice McIver said:

> That a state cannot be sued in any of its courts without its expressed consent, which can only be given by the legislative authority, is a proposition so universally conceded as to render any argument or authority to support it wholly unnecessary.

In a dissenting opinion, Chief Justice Simpson agreed:

> I do not deny the legal proposition that the state cannot be sued in the courts of this state, except by its own consent. This doctrine is too well settled and too firmly established to intimate even a doubt in reference thereto; and I fully concur in its correctness.

While this Court has authority to overrule its own decisions, Appellate Court Rule 217 contemplates that precedential rulings should not be overturned without giving interested litigants an opportunity to be heard. That rule reads as follows:

> Permission of the appellate court shall not be required to argue against precedent in the brief. Oral argument against precedent shall not be permitted except upon leave of the appellate court in which the case is then pending, pursuant to motion in accordance with Rule 224 filed at least fifteen (15) days prior to oral argument.

No party to this proceeding at the trial level or at the appellate level has asked this Court to review the cases overruled by the majority opinion. In ruling on this crucial matter, I submit that due process has been denied both defendants.

The error attributable to the judge in allowing punitive damages is the fault of both counsel for the plaintiffs and counsel for the defendants. Counsel for the plaintiffs in the prayer for relief sought punitive damages thereby representing to the court that such were legal. Counsel for the defendants failed to object under Rule 51 and is similarly at fault. There is sufficient blame to go around.

I would hold that the circuit court lacked the power to hear and determine the issue of punitive damages sought pursuant to 42 U.S.C. § 1983, and the issue was not waived by counsel's failure to object prior to submission of the case to the jury. At the post-verdict trial stage, counsel for the defendants in argument said: "And I don't think there can be any waiver of public policy." The judge took a contrary view.

Being a jurisdictional bar, sovereign immunity is not subject to waiver by the imposition of procedural requirements in litigation or by procedural defaults. 57 Am. Jur. (2d) *Municipal, County, School, and State Tort Liability* § 650 (1988). Accordingly, the failure to raise the issue at trial does not waive it. *Id. See also GNOC Corp. v. Estate of John C. Rhyne,* — S.C. —, 439 S.E. (2d) 274 (1994) (Davis Adv. Sh. No. 1 at 40) (the question of lack of subject matter jurisdiction may be raised at any time during the action, even on appeal, and cannot be waived or conferred by consent); *Dove v. Gold Kist, Inc.,* — S.C. —, 442 S.E. (2d) 598 (1994) (Davis Adv. Sh.

No. 7 at 30) (subject matter jurisdiction is the power to hear and determine cases of the general class to which the proceedings in question belong; a court lacking subject matter jurisdiction has no authority to act regardless of the consent of the litigants); 57 Am. Jur. (2d) *Municipal, County, School, and State Tort Liability* § 649 (1988) (lack of subject matter jurisdiction to award punitive damages may be raised at any time in the proceedings, even for the first time on appeal).

There is abundant authority for holding that immunity may not be waived and that the objection may be raised for the first time on appeal—and I submit *ex mero motu.*

> Rutherford alleges that the City has waived its immunity defense under the Maine Tort Claims Act by failing to plead the defense in its second answer and by failing to raise the issue at trial. In *Faucher v. City of Auburn,* 465 A. (2d) 1120, 1124 (Me. 1983), we recognized that the Maine Tort Claims Act is the statutory reformulation of the doctrine of sovereign immunity. We have previously concluded that sovereign immunity cannot be waived by imposition of procedural requirements or forfeited by procedural defaults. *Drake v. Smith,* 390 A. (2d) 541, 543 (Me. 1978); *Turner v. Collins,* 390 A. (2d) 537, 540 (Me. 1978). We find nothing in the Act that either expressly or impliedly shows a legislative intent to abrogate the holding of these cases. The City, therefore, did not waive its sovereign immunity defense by failing to plead the defense in its answer or at trial. *State of New Mexico v. Apodaca,* 105 N.M. 650 [735 P. 2d 1156 (Ct. App. 1987)] cert. denied.
>
> . . . The claim of immunity may also be raised for the first time even upon appeal. *Maes v. Old Lincoln County Memorial Commission. Hern v. Crist,* 105 N.M. 645 [735 P. 2d 1151 (Ct. App. 1987)].
>
> It is well established in North Carolina that the State is immune from suit unless and until it has expressly consented to be sued. *Great Am. Ins. Co. v. Gold, Comm'r of Ins.,* 254 N.C. 168, 172-73, 118 S.E. (2d) 792, 795 (1961). It is for the General Assembly to determine when and under what circumstances the State may be sued, *id.,* and even when legislative action is taken, statutes en-

acted in derogation of sovereign immunity must be strictly construed. *Jones v. Pitt County Memorial Hospital*, [104 N.C. App. 613, 410 S.E. (2d) 513] (Ct. App. of N.C. filed December 3, 1991).

In examining that underlying judgment, as we must, we find that that portion of the judgment awarding prejudgment interest is void for lack of subject matter jurisdiction. Where relief is precluded by the defense of sovereign immunity, the court is said to be lacking subject matter jurisdiction to grant the relief sought. *See Hutchins v. Mills*, 363 So. (2d) 818, 821 (Fla. 1st DCA 1978), *cert. denied*, 368 So. (2d) 1368 (Fla. 1979). Because an award of prejudgment interest does not fall within the parameters of the waiver of sovereign immunity expressed in Section 768.28, Florida Statutes, the trial court was without jurisdiction to enter such an award. It then follows that the trial court's denial of DOT's first Rule 1.540 motion was patently incorrect. *State of Florida v. Bailey* (Dist. Ct. of App. of Florida, 1st Dist., filed August 28, 1992).

IN RE: *GAMBLE v. STEVENSON REVIEW*
The majority opinion holds:
Second, the punitive damage award against the City was not unduly excessive or against the weight of the evidence. The trial judge conducted a post-trial review pursuant to *Gamble v. Stevenson*, [305 S.C. 104, 406 S.E. (2d) 350 (1991)] and determined that the award was appropriate given the facts of the case. We affirm his findings as to punitive damages.

No mention is made relative to a review of the punitive damages award against Officer Whitaker.

The review by the trial court did not comply with the mandate of *Pacific Mutual Life Insurance Co. v. Haslip*, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed. (2d) 1 (1991), nor with this Court's requirement of *Gamble*. These cases provide for a "meaningful and adequate" review by the trial court and such a post-trial review is mandated.

While unnecessary under the view I take for a determination of the issues on appeal, I am of the opinion that the trial judge erred in failing to give a meaningful review to the puni-

tive damages award against both the police officer and the City as required by the case of *Gamble, supra.* The propriety of punitive damages in any case has in recent years been the subject of much debate. In *Pacific Mutual Life Insurance Co., supra,* the Supreme Court of the United States attempted to get a handle on the issue by requiring the trial judge to review the fairness of the award. *Gamble* grew out of this United States Supreme Court requirement. In a review of a punitive damage award, *Gamble* requires the Court to consider "defendants' degree of culpability," "ability to pay," and "other factors." At this stage of the proceeding, the trial judge and counsel had one more opportunity to see that justice was done as relates to punitive damages. At that point, all parties, including the court, were in agreement that punitive damages could not, as a matter of law, be awarded. In my view, the judge, under *Gamble,* should have set aside the punitive judgment award against the City and the officer.

An award against the city punishes persons who are not culpable—that is the taxpayers. While punitive damages are sometimes justified on various grounds, some of the courts refer to punitive damages as a "windfall."

In a *Gamble* review, the judge must use his discretion and determine whether a punitive damage award is or is not fair. Among the things he is required to consider is the ability of a defendant to pay. There is nothing in the record relative to the ability of Police Officer Whitaker to respond to a punitive damage verdict. A *Gamble* review is not mentioned in the judge's formal final order; from the bench his ruling relative thereto was as follows:

> . . . Here again with regard to the Defendant's ability to pay, *there was not evidence of the Defendant's ability to pay.* To the extent the court is able to take into consideration the normal police officer's pay, I would say that an award of $5,000 is not overly generous in light of the conduct that was alleged and proved. (Emphasis added.)

There is nothing in the record to serve as a basis for determining that three $5,000 awards are commensurate with the police officer's ability to pay, and the judge made no inquiry relative thereto.

Unanswered are such questions as: (1) What property does the police officer own? (2) What is his salary? (3) Will a $15,000 verdict cause him to lose his job or declare bankruptcy? and (4) Will the payment of this verdict deprive his family of normal needs?

No meaningful review as contemplated by *Gamble* was provided. I would reverse.

If need be in order to reach the proper result in this case, I would adopt the reasoning of our Court in the case of *Toyota of Florence, Inc. v. Lynch, et al.,* — S.C. —, —, 442 S.E. (2d) 611, 615 (1994) (although not condoning the procedural default, this Court overlooked the lack of a contemporaneous objection to an outrageous, vicious and inflammatory jury argument, and reversed and remanded a jury's verdict); *Galloway v. Galloway,* 249 S.C. 157, 153 S.E. (2d) 326 (1967) (this Court held it may reach any issue affecting the rights of minors *ex mero motu); State v. Keenan,* 278 S.C. 361, 296 S.E. (2d) 676 (1982) (every court has the power and duty to decide all issues necessary to the determination of its own jurisdiction). In my view, counsel for both parties should have raised this issue of subject matter jurisdiction to the trial court, and, absent such action, the court should have raised the issue *ex mero motu.* This flagrant error on the part of the lawyers resulted in clear prejudice to the City, and consequently to the general public, in allowing an illegal recovery for which the public will have to foot the bill.

I would reverse the verdicts for actual and punitive damages against both defendants. Failing therein, I would hold that punitive damages were not properly recoverable in this proceeding.