544 S.E.2d 285

**Patricia FERGUSON, individually and on behalf of the
Estate of Howard D. Ferguson and on behalf of
all others similarly situated, Appellants,**

**v.**

**CHARLESTON LINCOLN/MERCURY, INC., Respondent.**

**No. 3300.**

Court of Appeals of South Carolina.

Heard Dec. 12, 2000.
Decided Feb. 20, 2001.
Rehearing Denied April 23, 2001.

504

Justin Lucey, John G. Brown, II, Justin O'Toole Lucey and M. Lee Robertson, all of Mount Pleasant, for appellants.

Henry E. Grimball, of Buist, Moore, Smythe & McGee, of Charleston, for respondent.

CURETON, Judge:

Howard Ferguson (Mr. Ferguson) sued Charleston Lincoln/Mercury, Inc. (CLM) for engaging in unfair or deceptive

trade practices during his purchase of an automobile from a CLM dealership. Mr. Ferguson died during the pendency of the action, but his wife, Patricia, continued to prosecute the action in his stead. She also sought class action certification. The trial court granted summary judgment to CLM and ruled the request for class certification was moot. We affirm in part and remand in part.

## FACTS

On January 17, 1997, Mr. Ferguson purchased a used 1993 Mercury Sable automobile from North Charleston Hyundai, an automobile dealership owned and operated by CLM. Patricia accompanied him during the purchase, but did not participate in all of the negotiations. After arriving at a price with a salesperson, Mr. Ferguson purchased the car by tendering a $200 down payment and signing a "Buyers Order" and a "Retail Installment Loan and Security Agreement" (Security Agreement).

The Buyers Order listed the car's "cash price" as $8,873.19. It then adjusted the cash price by several enumerated charges and credits to arrive at the amount to be financed, $8,491.69.[1]

The Security Agreement indicates that Eagle Finance Corporation would finance the $8,491.69. Although the Security Agreement correctly stated the amount to be financed ($8,491.69), it did not accurately reflect the calculation made by the Buyers Order. Specifically, it misstated the cash price and did not enumerate the $189.50 closing fee.

Mr. Ferguson took possession of the car on the night he bought it. After driving it for several weeks, he noticed he had not received a payment book and contacted CLM who referred him to Eagle Finance. Eagle informed Mr. Ferguson that it could not process the loan due to errors in the purchase documents and that he would have to return to the CLM dealership and execute new documents in order to complete the transaction. According to Patricia, Mr. Ferguson told her that CLM wanted "to put in a fee ... [and] get

---

1. This figure was arrived at by deducting $900 in credits (a $700 trade-in allowance and a $200 down payment) from the cash price then adding $518.50 in costs ($300 in state sales tax, $29 tag and title fee, and a $189.50 "closing fee").

more money out of us" which he refused to do. Shortly thereafter, CLM repossessed the vehicle.

Mr. Ferguson filed the instant action in 1997, but died during its pendency. Patricia was substituted as plaintiff by way of a consent order filed September 25, 1998.

On November 19, 1998, the trial court issued an order compelling discovery. Thereafter, the defendants moved for summary judgment on the merits which was granted by order filed January 15, 1999. The grant of summary judgment rendered the class certification issue moot. This appeal followed.

## LAW/ANALYSIS

Mr. Ferguson brought the instant action pursuant to the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act (Dealer's Act). S.C.Code Ann. §§ 56–15–10 to –130 (1991 & Supp.2000). In pertinent part, the Dealer's Act states:

Unfair methods of competition and unfair or deceptive acts or practices as defined in § 56–15–40 are hereby declared to be unlawful.

S.C.Code Ann. § 56–15–30(a) (1991).[2] The Act allows an injured party to recover money damages for violations of the Act. S.C.Code Ann. § 56–15–110 (1991).

### I. Survivability

In its brief, CLM argues, as an additional sustaining ground, that we should affirm the trial court's ruling because this action did not survive Mr. Ferguson's death. We agree.

█ "Under the present rules [of appellate practice], a respondent—the 'winner' in the lower court—may raise on appeal any additional reasons the appellate court should affirm the lower court's ruling, regardless of whether those reasons have been presented to or ruled on by the lower court." *I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 419, 526 S.E.2d 716, 723 (2000); Rule 208(b)(2), SCACR ("Respondent's brief

---

2. We do not view Mr. Ferguson's arguments as encompassing the contention that CLM's actions constituted unfair methods of competition.

may also contain argument asking the court to affirm for any ground appearing on the record as provided by Rule 220(c), [SCACR].")

■ "A cause of action created by statute survives when and only when some provision for its survival is made in the statute itself, or in some other statute." 1 C.J.S. *Abatement and Revival* § 151, at 206 (1985); *see* 1 Am.Jur.2d *Abatement, Survival, and Revival* § 53 (1994). Therefore, to determine the survivability of the instant action, we must look to South Carolina's general survival statute, S.C.Code Ann. § 15–5–90 (1976), and the Dealer's Act itself.

## A. General Survival Statute—Section 15–5–90

At common law, a personal action *ex delicto* did not survive the death of either party. *Bennett v. Spartanburg Ry. Gas & Elec. Co.*, 97 S.C. 27, 81 S.E. 189 (1914). However, the common law prohibition was partially abrogated around the turn of the last century with the enactment of a survival statute for actions involving injuries to real estate. Rev. Stat. § 2323 (1894) ("Causes of action for and in respect to any and all injuries and trespasses to and upon real estate shall survive both to and against the personal or real representative (as the case may be) of deceased persons ... any law or rule to the contrary notwithstanding."). The scope of the first survival statute was expanded in 1905 to include "any and all injuries to the person or to personal property...." S.C.Code of 1912 § 3963 (Civ.Code). The statute has survived with little change to the present day:

> *Causes of action for* and in respect to any and all injuries and trespasses to and upon real estate and *any and all injuries to the person or to personal property shall survive* both to and against the personal or real representative, as the case may be, of a deceased person and the legal representative of an insolvent person or a defunct or insolvent corporation, any law or rule to the contrary notwithstanding.

S.C.Code Ann. § 15–5–90 (1976) (emphasis added).

■ Generally, "[a]ny cause of action which could have been brought by the deceased in his lifetime survives to his representative under [section 15–5–90]." *Layne v. Int'l Bhd. of*

*Elec. Workers Local 382,* 271 S.C. 346, 352, 247 S.E.2d 346, 350 (1978). However, despite section 15–5–90's broad language, our supreme court recognizes several exceptions to it for actions involving malicious prosecution, slander, and fraud and deceit. *Id.* at 349 & 349 n. 2, 247 S.E.2d at 349 & 349 n. 2; *see Brewer v. Graydon,* 233 S.C. 124, 128, 103 S.E.2d 767, 769 (1958) ("It is interesting to note that with a liberal construction [of the general survival statute] this Court has held that actions for malicious prosecution, slander, and fraud and deceit do not survive. . . .").

■■■■ Survivability is determined by the "nature and substance of the cause of action, rather than the form of the remedy. . . ." *Ward v. Atlas Constr. Co.,* 276 S.C. 346, 349, 278 S.E.2d 621, 623 (1981); *see Page v. Lewis,* 203 S.C. 190, 26 S.E.2d 569 (1943). In the instant action, Ferguson essentially alleged that CLM fraudulently concealed the closing fee during the purchase and failed to disclose the fee on the associated loan documents. Because this action is based on a theory of fraud and deceit, it falls within the ambit of the fraud exception to the general survival statute. Accordingly, the instant action does not survive Mr. Ferguson's death by operation of section 15–5–90.

## B. *Dealer's Act*

■■■■ "Whether an action survives the death of a party must be determined by looking towards the law, state or federal, under which the cause of action arose." 1 Am.Jur.2d *Abatement, Survival, and Revival* § 53, at 110 (1994). Although this general rule has never been applied to a cause of action arising under the Dealer's Act, the courts of this state have applied the rule's rationale to other statutory actions.

In *Estate of Covington v. AT & T Nassau Metals Corp.,* 304 S.C. 436, 405 S.E.2d 393 (1991), the Court held that a workers' compensation action did not survive the death of a claimant. After deciding the general survival statute, section 15–5–90, was inapplicable to an action brought pursuant to the South Carolina Workers' Compensation Act (Act), the Court analyzed the Act and found no statutory provision to support the

survivability of the claim.[3]

■ This Court reached a similar conclusion in *Reed v. Medlin,* 284 S.C. 585, 328 S.E.2d 115 (Ct.App.1985), *overruled on other grounds by Washington v. Whitaker,* 317 S.C. 108, 451 S.E.2d 894 (1994), wherein it held that a statutory cause of action raised against the state did not survive the death of the injured plaintiff because the statutory scheme did not contain a survival provision. "[U]nless a statute specifically provides for survival of an action for personal injury, it does not lie after the injured person's death." *Id.* at 589, 328 S.E.2d at 118; *cf. Layne,* 271 S.C. at 352, 247 S.E.2d at 349 (holding that an action brought pursuant to the Right to Work Act survived because the party opposing survivability offered "no authority or precedent which would weigh against application of the general [survival] rule. . . .").

The Dealer's Act contains no survivability provision; therefore, the instant action does not survive Mr. Ferguson's death.

## II. Class Certification

■ Ferguson argues the trial court erred in not certifying a class action since all the criteria for certification were met. We disagree.

■ Usually, an order denying class certification is interlocutory and not immediately appealable. *See Eldridge v. City of Greenwood,* 308 S.C. 125, 126–27, 417 S.E.2d 532, 534 (1992) ("Orders under Rule 23, SCRCP are interlocutory and thus, immediately appealable only in certain circumstances."); *Waller v. Seabrook Island Prop. Owners Ass'n,* 300 S.C. 465, 388 S.E.2d 799 (1990) (recognizing an order denying class certification as an interlocutory order). However, we may review an interlocutory order when, as now, it contains other appealable issues. *Pruitt v. Bowers,* 330 S.C. 483, 499 S.E.2d 250 (Ct.App.1998); *see also Hite v. Thomas & Howard Co.,* 305 S.C. 358, 360, 409 S.E.2d 340, 341 (1991) ("[A]n order that is not directly appealable will nonetheless be considered if there is an appealable issue before the Court and *a ruling on*

---

**3.** Although the Act did not contain a survival provision applicable to the particular claim at issue in *Estate of Covington,* the Court noted that the Act does, in limited circumstances, provide for the survival of an action.

*appeal will avoid unnecessary litigation."*) (emphasis added), *overruled on other grounds by Huntley v. Young,* 319 S.C. 559, 462 S.E.2d 860 (1995).

The prerequisites of a class action are set forth in Rule 23, SCRCP:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) *the claims* or defenses *of the representative parties are typical of the claims* or defenses *of the class,* (4) *the representative parties will fairly and adequately protect the interests of the class,* and (5) in cases in which the relief primarily sought is not injunctive or declaratory with respect to the class as a whole, the amount in controversy exceeds one hundred dollars for each member of the class.

Rule 23(a), SCRCP (emphasis added).

The proponent of class certification must prove each prerequisite of certification. *Waller v. Seabrook Island Prop. Owners Ass'n,* 300 S.C. 465, 388 S.E.2d 799 (1990). "The failure of the proponents to satisfy any one of the prerequisites is fatal to class certification." *Id.* at 467, 388 S.E.2d at 801.

In as much as Mr. Ferguson's action does not survive, there is no representative party to satisfy the third and fourth requirements. Accordingly, the trial court did not err in ruling that the issue of class certification was mooted by the dismissal of Ferguson's claim.

### III. Discovery Costs

Ferguson also argues the trial court erred in ordering her to pay one-half of CLM's cost for producing the documents she had requested from CLM pursuant to Rule 34, SCRCP. As this issue has not been finally decided by the trial court, we remand it for such a determination.

As a general rule, a discovery order is not immediately appealable because it is an interlocutory order. *Hamm v. South Carolina Pub. Serv. Comm'n,* 312 S.C. 238, 439 S.E.2d 852 (1994). However, as we discussed above, an interlocutory order may be reviewed if it contains appealable issues which are properly before the court. *Hite,* 305 S.C. 358, 409 S.E.2d 340; *Pruitt,* 330 S.C. 483, 499 S.E.2d 250.

Ferguson asked CLM for copies of its dealership's buyers orders and security agreements pursuant to Rule 34, SCRCP. CLM provided Ferguson with copies of the buyers orders, then demanded a $30 per hour clerical fee plus $0.15 per page copying fee for all the copies it had already provided as well as any additional copies necessary to satisfy the Ferguson's discovery requests. Ferguson's counsel agreed to the charge.

On or about November 18, 1998, CLM invoiced Ferguson in the amount of $1,041.15 in discovery costs which included a $96.15 copying fee and a $945 clerical fee. Shortly thereafter, Ferguson challenged the amount of the clerical fee. By order dated November 19, 1998, the trial court ordered Ferguson to immediately pay CLM half of the invoiced fee, $520.57, but left the final determination of "the proper charge for the subject documents [to] be resolved by the trial judge."

Such a determination has never been made; therefore, the issue is remanded to the trial court.

## CONCLUSION

For the foregoing reasons, the circuit court's order on appeal is

**AFFIRMED IN PART AND REMANDED IN PART.**

GOOLSBY and CONNOR, JJ., concur.